UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
TUCKERBROOK ALTERNATIVE          )
INVESTMENTS, LP,                 )
                                 )
         Plaintiff,              )
                                 )
    v.                           )        CASE NO. 09-CV-11672-WGY
                                 )
SUMANTA BANERJEE,                )
                                 )
         Defendant.              )
_____)

## MOTION TO VACATE ENTRY OF DEFAULT JUDGMENT

COMES NOW the Defendant, Sumanta Banerjee, acting on his own behalf, hereby moves this Honorable Court to enter an Order to Vacate Judgment and offers in support, the following:

**Background**

1. The Defendant, Sumanta Banerjee, does not reside any longer in the United States, and in fact, has resided in India since January of 2009. Mr. Banerjee is a United States citizen as well as an Overseas Citizen of India.

2. India is a Hague Convention Member Country.

3. Banerjee is subject to The Hague Convention Rules and Regulations as he is now a resident of India and no longer resides in United States.

4. Banerjee does not receive email notifications of the Motion and Pleadings of this Honorable Court. As Banerjee is a pro se litigant, he is the attorney of record for this case. In fact, Mr. Banerjee has been receiving only **_some_** of the Motion and Pleadings of this Honorable Court. Banerjee had requested email notification through the Court's email system.

5. The Plaintiffs and Banerjee have been previously involved in a lawsuit, case 1:08-cv-10636-PBS, that was mainly a partner fight for control of Funds in which each was a 50-50 partner in. This current lawsuit stems from John Hassett, the Managing Principal of Tuckerbrook Alternative Investments, the Plaintiff's, demonstrated predilection to waste the Court's time in frivolous lawsuits.

6. The Counsel for the Plaintiff requested this Honorable Court to move for an Order of Deemed Served on March 24, 2010, but the Defendant did not receive the papers regarding this motion; i.e. ex-parte communication, and therefore could not respond in a timely manner to the Motion outstanding.  Please see Exhibit A for the Motion to Deem Served. The Motion was granted on April 12.

7. Banerjee was not aware of any Motion or Pleadings made by the Plaintiff until Banerjee contacted the Docket Clerk, Matthew Paine to ascertain what was happening with regards to case 09-cv-11672.  Please see Exhibit B for the email to Mr. Paine.

8. Please see below for a relevant timeline which will give this Honorable Court the accurate timeline of the events as they occurred. The chronology of events will be an effective way to visualize the series of events as it relates to this case and the assertions made by Mr. Carnathan and the Plaintiff.

| Date | Events | Action |
|---|---|---|
| September 23, 2008 | Settlement discussions were heard by a Mediation Judge, with the parties agreeing to settle the Case 1:08-cv-10636-PBS | Nothing in terms of a Settlement was signed. The thought/idea was to use the agreement that was recorded as a starting point for discussions that would then form the basis of a more complete and comprehensive Settlement Agreement and the related General Releases and Stipulations.[See exhibit 6 & 7 for emails between counsels from September 24th to November 7th arguing about the documents and at times denying Settlement had taken place.  Prior history was that there was at least one Settlement that Tuckerbrook did not uphold that took place in August 2008. This was the second formal attempt. |

|  | The Settlement that was discussed was related to the Case 1:08-cv-10636-PBS and covered all the topics. The judge ordered the parties and their attorneys to memorialize the discussion through negotiations and a settlement that would crystallize all the discussed points. | The lawyers got together and started drafting a formal settlement agreement. But the parties could not agree on several points of the settlement. Hence, after nearly two months, the parties decided that what was in the Court Settlement would be converted into a formal settlement and the additional releases would be part of that settlement. This "Final Settlement" was not Effective till both parties signed releases and other accompanying documents on Nov 7, 2008. The final settlement agreement became the court transcript on a *de facto* basis.  Please see Exhibit 6 &7 for the emails between the Counsels. |
| Sept, 24 | Next day after the settlement discussions the Plaintiff put out a statement to the market and clients. The statement was to be vetted by both parties and mutually decided on so there was no confusion or detriment to either party. | Exhibit C. A press release that was done in Bad Faith by the Plaintiff, stating that the Settlement was reached, and everything was resolved between the Plaintiff and the Defendant. The statement stated that SB is no longer in control of any of the Funds, and that he is no longer responsible for their maintenance. This press release was not vetted nor was it approved by the Banerjee the Defendant, Counterclaim Plaintiff Banerjee or his Counsel. |
| Sept 25, 2008 | Judge Patti Saris Dismisses the Case 1:08-cv-10636-PBS, as | The judge dismissed the case, as the Mediation Judge had submitted papers |

| | | |
|---|---|---|
| | there was a settlement reached. | stating that the parties of the lawsuit had agreed to settle the case, with the memorialized document as a starting point for the complete and comprehensive Agreement that would be negotiated over the course of the next several weeks. |
| Sept until Nov 7, 2008 | Constant emails between the attorneys of record to resolve the disagreements between TAI and SB, with regard to the finer details of the settlement and the drafting of the Final Settlement Agreement. | Negotiations between the attorneys for both sides continued on a daily basis with no common ground being reached as the final agreement.  No agreement was reached and so the court transcript became the *de facto* Settlement Agreement with the addition of certain releases and stipulations.  The Final settlement Agreement was executed on Nov 7th, 2008 with releases and other documents. |
| Nov 21, 2008 | Escrowed Management Fees owed to Banerjee was released to the Defendant. | Mutual releases and stipulations were given so that settlement was complete and comprehensive. |
| | | |
| Nov 26 2008 | Alkek files a lawsuit against Tuckerbrook Alternative Investments. C.A. no 4:08-cv-3501. (Alkek case) | Alkek claimed that Tuckerbrook should return their money since Banerjee was no longer control of GSS and the Key Man clause was activated. The Press release to the investors had made it abundantly clear that Banerjee was not in control of GSS going forward from the Final Settlement. The Joint Motion to Release Escrow Funds was a public |

| | | |
|---|---|---|
| | | document. |
| Jan 2009 | Banerjee family moves to India | Banerjee's father was not doing well. |
| July 2009 | Banerjee is served a subpoena to appear for a deposition for the Alkek case. Since Banerjee was leaving for India, through his counsel, Mr. Hirsch, he had offered to submit to a video or teleconference to expedite the deposition in order to be in compliance of the Discovery timeline for the case. | Medical and health reasons incidents unfortunately eventually prevented Banerjee from attending the scheduled deposition. The Honarable Judge Underhill in CT excused Banerjee, in January 2010 due to health reasons. Mr. Banerjee was ready to testify over phone or video (despite some health issues) and comply with the Subpoena. However, Tuckerbrook refused and Judge eventually excused Mr. Banerjee. Mr. Carnathan was well aware of all this since Banerjee was on a phone call to the Honarable Judge Underhill in CT at least two/three times between September 2009 and January 2010. Also, Douglas Hirsch (Mr. Banerjees counsel) had apprised Carnathan many times that Banerjee was out of the country in August 2009 and could not be deposed.  Despite that Carnathan has continued to use defamatory language about Mr. Banerjee's whereabouts. |
| Sept 2009 | Mr. Carnathan's Affidavit says that the Plaintiff has engaged a private detective. | Mr. Carnathan's affidavit that says a Private Investigator was hired in the US to follow Mr. Banerjee. They were trespassing in Mr. Banerjee's property in the US (according to neighbors in CT).   **Harassment and** |

| | | **Disparagement of the Defendant continues by Tuckerbrook and their counsel (both perfectly suited for each other)** |
|---|---|---|
| December 2009 | Mr. Banerjee's father received some mail that was mistakenly place in his mailbox that was addressed to Mr. Sumanta Banerjee. The late Mr. Banerjee returned the papers to address that was on the envelope. | The mail was returned to the company from whence it came in--Brutalia Associates is based in Kolkata located on Serpentine Road. See exhibit E. |
| | Mr. Banerjee's doctor in India started receiving harassing phone calls from people claiming to be with the CBI (the Indian version of FBI). Statements made during phone conversations were disparaging and defamatory. | Only way that the purported "CBI" (Always Security hired by Tuckerbrook) could have known about Mr. Banerjee's illness and Banerjee's doctor information was through Tuckerbrook. Mr. Banerjee had sent proof of medical certificates to Tuckerbrook, Mr. Carnathan and the Judge in the case. Tuckerbrook continued to harass Banerjee's doctor and make disparaging remarks about Mr. Banerjee. **Harassment and Disparagement.** |
| January 2010 | Fraudulent Proof of service was provided to the Court | Mr. Banerjee never formally received the complaint papers of a case 9-cv-11672-WGY that was filed in October 2009. |
| | Continuation of Harassment of Mr. Banerjee and his family | The people were seen loitering about the gated community complex where Mr. Banerjee and his family live. |

| | | |
|---|---|---|
| | | Always Security, agents of Tuckerbrook, were taken into custody and when interrogated, revealed that they had been hired by Tuckerbrook. They made several disparaging remarks during the interrogation. A FIR (formal investigative report, exhibit F) was logged against Always Security, after which the harassment ceased.  This FIR is included as part of the evidence of Banerjee's case that was filed against Tuckerbrook and John Hassett, case number 10-cv-10894-WGY. In India, following people is not legal (borderline criminal offense). Again statements made by agents of Tuckerbrook were **defamatory and disparaging** in nature. Tuckerbrook's agents were shown to be breaking the law in India. |
| February 2010 | Default notice received by Mr. Banerjee | First time that Mr. Banerjee has heard about this case. Mr. Banerjee petitions court for dismissal of the Default Motion which is granted on March 9, 2010. Exhibit G and Exhibit H. Banerjee's Motion for Dismissal of Default Motion was based on **fraudulent Proof of Service given to the Courts by Counsel, Carnathan.** Tuckerbrook and Carnathan omitted an important detail intentionally. **They** |

|  |  |  | **neglected to notify the courts that the Processor actually received the unopened documents, purported to be the complaint papers, and signed a letter stating so.  Carnathan in his affidavit states, that the complaint papers were received by Mr. Banerjee on November 30, 2009.** Carnathan was well aware that there was a chance that Banerjee did not get the papers in question based on the information that he received but neglected to mention to this Honorable Court. **Mr. Carnathan is misstating the fact.  The Processor clearly states in his Affidavit that the complaint papers were "delivered at the letterbox meant for the use name Mr. S.K. Banerjee father of the Mr. Sumanta Banerjee, defendant, who was not readily available and no information provided when he may be available." However, processor also fails to mention that they were returned (with receipt provided by Brutalia) by the late Mr. SK Banerjee (who passed away in late February)** Please see exhibit I, the Certificate of Service. Please note that ***Mr. Carnathan is purposely trying to confuse this Honorable Court,  and*** |

| | | |
|---|---|---|
| | | *has perjured himself by stating in his Affidavit, paragraph 3, dated February 5, 2010, that the complaint papers were "served to Mr. Banerjee." And confusing this Honorable Court into thinking that the Complaint Papers were actually delivered to Mr. Sumanta Banerjee. He also conveniently and deliberately omits to mention that the now late Mr. S.K. Banerjee returned the unopened sealed envelope which purportedly contained the complaint papers to Brutulia, the purported Service Processor, the very next day on December 1st, 2009. Brutulia Associates acknowledged receipt of the same and signed a letter of proof, attached as exhibit J.*<br><br>Mr. Carnathan's misstatements continue further in his affidavit. Mr. Carnathan states that he delivered the Complaint by email to Banerjee, but that was not the case. Email has not been sanctioned by this Honorable Court as a method of delivery. |
| Mar 4, 2010 | Judge Young grants Banerjee's request to Vacate the Default Motion. | Exhibit H. |
| March 24, 2010 | Carnathan files Motion to Deem Service | This filing was *ex-parte* communication because Banerjee did not receive any |

| | | notice of this Motion/Pleading. Banerjee only learnt of this Motion as a result of his communication with Mr. Matthew Paine, docket clerk of the Honorable Judge Young. Banerjee made contact with Mr. Paine to ascertain the Court's status and at that time was notified of the Court's decision. Exhibit E, email exchange between Mr. Paine and Banerjee. |
|---|---|---|
| April 23, 2010 | Banerjee sent a letter to Honorable Judge Young | Banerjee received notification of the Deem Service on April 12, 2010 and wrote to the Judge requesting clarification and stating again that Banerjee had yet to receive the papers of the Complaint.  Exhibit K, letter from Banerjee to Court. |
| April 23, 2010 | Honorable Judge Young orders that Tuckerbrook has to forthwith deliver the papers to Banerjee via verifiable means | Exhibit L: Court's Order as it relates to clarification request of Banerjee |
| May 19, 2010 | Banerjee notifies the court of a courier visit. | Exhibit M, letter to the Court. There was some attempt of delivery of purported complaint papers, on May 1, but they were never received by Banerjee. **The Courier service, agents of Tuckerbrook, perjured themselves by saying that Banerjee had refused the Papers. Exhibit I, letter from Courier Service to Carnathan about the Service Process.** |

| | | |
|---|---|---|
| | | **Banerjee was not in Kolkata on May 1st, nor was his wife, please see affidavit of Mrs. Akshita Banerjee, exhibit N.** Banerjee was traveling on business and also left the country on May 15, 2010, please see Exhibit O, passport pages of Banerjee.  Prior to their departure, on May 15, 2010 there was no further attempts at redelivery of any documents by Mercury or any other courier service. |
| June 4 2010 | Complaint Papers received as an exhibit to Mr. Carnathan's Affidavit. | While Banerjee was traveling, he did not have ready access to his email. On June 4, 2010, he received a copy of a Motion of Default from Carnathan's office in which there was an affidavit in which there was an exhibit that contained case 09-cv-11672-WGY complaint papers. *This form of service via email was not sanctioned by this Honorable Court nor does it conform to the Rules of Service of The Hague Convention, which India is a member of since 2006. Mr. Carnathan is well aware of serving residents of The Hague Convention countries and the process involved therein. He makes mention of this knowledge in his affidavit accompanying his motion to deem served, Exhibit A. He mentions that he was trying to serve the* |

|  |  |  | *Complaint papers through the Hague Convention but because the process was long he decided to email it to Banerjee. Carnathan and Tuckerbrook are well aware, demonstrated by his statements, that they need to follow the Rules of service of the Hague Convention for a resident, Mr. Banerjee, of a member country such as India.* <br><br> The Plaintiff has provided no proof of serving the documents through the appropriate channels as mandated by the Hague Convention. <br><br> The Rules of the Hague Convention, governing India, is attached as exhibit P. Hereto: <br><br> *All the requirements of the Hague Convention must be met while serving the documents, complaints, summons / subpoena in all Civil matters, including Matrimonial, Divorce, Custody, family law and others; Commercial & Corporate Matters. In addition, the special requirements declared by India must be met. The declarations to the Hague Service Convention made by India include the following conditions:* <br><br>    •  *Documents for service must be* |
|---|---|---|---|

| | | *written in the English language. This is a good news for USA litigants who do not have to bear the costs of translation.* <br><br> - ***Documents can not be served via mail.*** <br><br> - ***Documents must be served indirectly via the proper authority in India.*** <br><br> - *Documents can not be served directly to the defendants in India by private judicial officer.* <br><br> The complaint papers were not served by proper authorities, and Mercury Courier Service was not a valid method of delivery, under the Hague Convention. Also, dropping it into a mailbox belonging for exclusive use of another person is in direct violation of Rules of Service under either federal rules or Hague Convention rules. <br><br> Banerjee has been traveling on business since May 15, 2010 and had sporadic access to email until he returned to India on July 12, 2010. Banerjee has attached as exhibit 9, the relevant pages of his passport. |
|---|---|---|
| May 27, 2010 | Tuckerbrook motion for Default Judgment | Banerjee has been traveling out of India from May 15th to July 12th, on business. |

During that time, he had sporadic access to his email, but did finally receive on June 4th, the Complaint papers via an email of Mr. Carnathan's affidavit dated May 27th, 2010. Banerjee has been preparing his response to both the Motion for Default Judgment as well as a Dismissal of all Charges. Banerjee being a resident of India, which is a member country of the Hague Convention, is entitled to six months to respond to any judgments, as provided for in Article 15, of the Hague Convention, hereto attached, as exhibit H. Mr. Carnathan knows it (or he may pretend ignorance now) and should not have filed Motion for default judgement.

Article 15: states that (emphasis added)when a writ of summons or other judicial document is to be served to person residing outside the United States, then:

*b) **a period of time of not less than six months, considered adequate by the judge in the particular case, has elapsed since the date of the transmission of the document,***

| | | |
|---|---|---|
| June 18 2010 | Banerjee responds to Motion | In good faith, Banerjee has been responding to the Court and its Motions and Pleadings despite the fact that Banerjee does not have access to the Courts' email system. Banerjee did respond to the Plaintiff's Motion of Default while traveling. Banerjee acknowledged receipt of the Complaint Papers although they were not served under any convention, neither Hague nor Federal Rules, nor even the Honorable Court's Order. |

## MEMORANDUM IN SUPPORT OF MOTION OF RELIEF

Federal Rules of Civil Procedure Rule 4, states for Service of judicial documents under the Civil Code for serving an individual in a foreign Country:

**(f) Serving an Individual in a Foreign Country.**

Unless federal law provides otherwise, an individual - other than a minor, an incompetent person, or a person whose waiver has been filed - may be served at a place not within any judicial district of the United States:

(1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by **the Hague Convention** on the Service Abroad of Judicial and Extrajudicial Documents;

(emphasis added)

Carnathan and the Plaintiff were aware of the Rules of Service as required by the Hague Convention, by their own admission, in *Memorandum in Support of Plaintiff's Motion to Deem Service of Process Effectuated*, included as Exhibit A, dated 3/24/2010.

In a landmark decision handed down in 1988, the US Supreme Court declared that the *Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters* (the "Hague Service Convention") is the mandatory and exclusive means of effecting service of process upon international Defendants, *Volkswagen AG v. Schlunk*, 486 US 694, 108 S. Ct. 2104, 100 L. Ed. 722 (1988).  Mr. Banerjee is a resident of India and an Overseas Citizen of India and has been a resident of India since January 2009. India has been a member of the Hague Convention since November 2006. India is now a signatory to the *Hague Convention on the Service Abroad of Judicial and Extra-Judicial documents in Civil and Commercial Matters*.Therefore, any judicial papers for Mr. Banerjee needs to be served under The Hague Convention Rules and Guidelines, as Mr. Carnathan admits to in his *Memorandum in Support of Plaintiff's Motion to Deem Service of Process Effectuated*, included as Exhibit A, dated 3/24/2010.

Article 15 states that the defendant is to have a period of six months (upon service) before a judgment can be rendered and Article 16 states that if there has been a judgment rendered, then the defendant will have a period of one year to respond to the judgment. Please see below for the Articles and exhibit Q for the complete Articles of the Hague Convention.

### *Article 15*

*Where a writ of summons or an equivalent document had to be transmitted abroad for the purpose of service, under the provisions of the present Convention, and the defendant has not appeared, judgment shall not be given until it is established that -*

*a) the document was served by a method prescribed by the internal law of the State addressed for the service of documents in domestic actions upon persons who are within its territory, or*

*b) the document was actually delivered to the defendant or to his residence by another method provided for by this Convention,*

*and that in either of these cases the service or the delivery was effected in sufficient time to enable the defendant to defend.*

*Each Contracting State shall be free to declare that the judge, notwithstanding the provisions of the first paragraph of this Article, may give judgment even if no certificate of service or delivery has been received, if all the following conditions are fulfilled -*

*a) the document was transmitted by one of the methods provided for in this Convention,*

*b) <u>a period of time of not less than six months, considered adequate by the judge in the particular case, has elapsed since the date of the transmission of the document,</u>*

*c) no certificate of any kind has been received, even though every reasonable effort has been made to obtain it through the competent authorities of the State addressed.*

*Notwithstanding the provisions of the preceding paragraphs the judge may order, in case of urgency, any provisional or protective measures.*

*Article 16*

*When a writ of summons or an equivalent document had to be transmitted abroad for the purpose of service, under the provisions of the present Convention, and a judgment has been entered against a defendant who has not appeared, the judge shall have the power to relieve the defendant from the effects of the expiration of the time for appeal from the judgment if the following conditions are fulfilled -*

*a) the defendant, without any fault on his part, did not have knowledge of the document in sufficient time to defend, or knowledge of the judgment in sufficient time to appeal, and*

*b) the defendant has disclosed a prima facie defence to the action on the merits.*

*An application for relief may be filed only within a reasonable time after the defendant has knowledge of the judgment.*

*Each Contracting State may declare that the application will not be entertained if it is filed after the expiration of a time to be stated in the declaration, but which shall in no case be less than one year following the date of the judgment.*

All the requirements of the Hague Convention must be met while serving the documents, summons / subpoena in all Civil matters, including Matrimonial, Divorce, Custody, family law and others; Commercial & Corporate Matters. The Hague Convention provides several methods by which litigants may effect service, provided the destination country has not objected to those methods.  These methods include service via the Hague Central Authority, via mail, or via private judicial officer.  Mercury is not a "private judicial officer"; they are merely a courier service. This Honorable Court should not consider any attempts of delivery by this method as valid or sanctioned by the Hague Convention. ***Also, Brutalia, Mercury and Carnathan all have committed perjury in this case.***

An individual may be served at a place not within any judicial district of the United States by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention. See FED. R. CIV. P. 4(f)(1). Any action "where there is occasion to transmit a judicial or extra-judicial document for service abroad" is subject to The Convention on Service Abroad of Judicial and Extra-judicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, at 362, Art. 1 ("Hague Convention"). See Volkswagenwerk Aktiengesellschaft v. Schlunk, 486 U.S. 694, 699 (1988).

A decision to set aside the entry of default is left primarily to the discretion of the Court. Bailey v. United Airlines, 279 F.3d 194, 204 (3d Cir. 2002); see also United States v. $55,518.05 in U.S. Currency, 728 F.2d 192 (3d Cir. 1984). However, in a close case, doubts should be resolved in favor of setting aside the default and reaching a decision on the merits, Farnese v. Bagnasco, 687 F.2d 761, 764 (3d Cir. 1982), as the Third Circuit

"does not favor entry of default or default judgments." United States v. $55,518.05 in U.S. Currency, 728 F.2d at 194-195.

Three factors evaluated when considering a motion to set aside a default under FED. R. CIV. P. 55(c) or to reopen a default judgment under FED. R. CIV. P. 60(b): first, whether the plaintiff will be prejudiced; second, whether the defendant has a meritorious defense; and third, whether culpable conduct of the defendant led to the default. Hritz v. Woma Corp., 732 F.2d 1178, 1181 (3d. Cir. 1984).

   ***First, there is no prejudice to Plaintiff if default is vacated.*** For a finding of prejudice, there must be a "loss of available evidence, increased potential for fraud or collusion, or substantial reliance upon the judgment." Feliciano v. Reliant Tooling Co., 691 F.2d 653, 657 (3d Cir. 1982). ***None of these indicators of prejudice weigh against vacating default in this case.***

   ***Second, Banerjee asserts and can show that he has a meritorious defense.*** He has filed his own lawsuit (10-cv-10894-WGY) against Tuckerbrook and John Hassett. Banerjee believes he has shown that the allegations are completely without merit, frivolous, and baseless and continue the pattern of harassment, disparagement and frivolous lawsuits designed to waste this Honorable Court's time. ***Attached as exhibit Q is the Motion to Dismiss.***

   ***Third, there is no proof to show that Banerjee's conduct led to the default.*** In fact, it was the perjury committed by Brutalia Associates, Mercury Courier Service and Mr. Carnathan himself, that led to the Motion of Default being granted, as incorrect information was given to this Honorable Court and based on that, an Order was given. Mr. Banerjee has continued to act in good faith, despite receiving the Complaint documents, as an exhibit, and is responding to the Court in a timely manner. The Hague Convention, and as well as the Federal Rules of Civil Rule 4 (f)(1) were not adhered to in properly serving the Defendant, Banerjee. See, e.g., Scholz Design, Inc. v. Annunziata, 2007 U.S. Dist. LEXIS 65392, at*6 (D.N.J. Sept. 4, 2007) (vacating default entered against defendant, noting that while plaintiff accused defendant of intentionally avoiding service,

defendant responded that the failure to effect service resulted from plaintiff's failure to serve at the proper address).

In another case, _Marlabs Incorporated v. Achen Jakher,_ the Honorable Judge Dennis Cavanaugh found that because the three tests mentioned above were passed and allowed the Motion to Vacate Default Judgment.

Based on the Fed.R. Civ.P. 60(b), which states:

> _On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:_
>
> _(a) mistake, inadvertence, surprise, or excusable neglect;_
>
> _(b) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);_
>
> _(c) **fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;**_
>
> _(d) the judgment is void;_
>
> _(e) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or_
>
> _(f) any other reason that justifies relief._

**The Defendant respectfully requests that this Honorable Court consider the new evidence presented; as well as the fact that although the Plaintiff and Counsel were aware of the Hague Convention, they have continued to ignore the process required to serve the Defendant.**

Based on Fed R Civ 60(b) (b), we would like to demonstrate that there is new evidence that the Plaintiff has conveniently forgotten to mention in their complaint and subsequent documents that were submitted to this Court; again another example of misrepresentation and material misstatements that has been a consistent and predictable behavior of the Plaintiffs and their Counsel.

In the Plaintiff's complaint, Counsel makes mention of a <u>Settlement Date</u>. The Settlement Date was **NOT** September 23, 2008, as the Plaintiff alleges. In fact, the date of September 23, 2008 was when there was a mediation whereby the details of the Settlement were discussed and put on record by the Mediation Judge. After that date, there were several attempts for a proper and correct settlement that would detail all that was discussed on September 23, 2008 and the additional releases that would be in addition to the formal Business Agreements.   In Exhibit R, it is plain to see that the Settlement was still under negotiation and not finalized, in fact because the Counsels could not agree on the several terms, the agreement on record was made the de facto Final Agreement which was signed in **November 7, 2008. Exhibit R,** also includes the emails from the Counsels of both the Defendant and the Plaintiffs discussing the various versions that were produced.

Based on 60(b)(c) of the Civil Code, the Defendant would like to demonstrate to the Court that the information that the Plaintiff and Mr. Carnathan have submitted to the Court in several documents are incorrect and contain material misrepresentations of the actual truth. These documents include (a) the proof of service that was submitted to the Court (b) the documents submitted by the Courier Service in April of 2010 and Brutalia Associates in January 2010.

The proof of service (January 2010) that was submitted in to the Court was false. Please see **Exhibit  J** of a written letter that was sent along with return of the unopened documents. The envelope was returned to the delivery company and a letter was unopened as exhibit J shows. The Defendant, Banerjee, had no knowledge at that time of any lawsuit or had any idea as to the contents of what was sent incorrectly to Banerjee's father's mailbox. The messenger attempted to deliver documents, addressed to Mr. Sumanta Banerjee, to the late Mr. S.K. Banerjee.  The messenger put the documents in the mailbox, did not confirm receipt and promptly left the premises. This is clearly stated in the Proof of Service documents as well. When the late Mr. Banerjee became aware of the messenger's mistake of leaving in the incorrect box, he returned the documents as

detailed in the letter that is submitted as **Exhibit E.  Mr. Banerjee did not receive the first attempted delivery of the Complaint as incorrectly represented by the Plaintiffs and Counsel.**

The Courier Service, DHL operating as Mercury, perjured themselves when they stated that "DHL contacted Sumanta at 9:56am on April 30, 2010, and the shipment was still being refused." Mr. Banerjee was not present in the house to take delivery of the papers (delivery came during the day, when Mr. Banerjee is not at home), in fact when the messenger came in April, 2010 to try and deliver the papers, Mr. Banerjee was not even in Kolkata, he was traveling within India. The letter from the Courier Service also states that the document was returned, unopened; again, proving that Mr. Banerjee was not in possession of the complaint documents. The Courier service did not try and redeliver. Please see affidavit of Mrs. Akshita Banerjee in exhibit N.

Additionally, the Plaintiff further alleges that Mr. Banerjee received a copy of the complaint for the case in question from the Docket Clerk, Mr. Matthew Paine. That is also a misstatement; Mr. Banerjee has been in receipt ***__only__*** of documents that are direct motions of the Court, not any documents that are the responsibility of the Plaintiffs to deliver to Mr. Banerjee. Banerjee has seen that Carnathan's pleadings and motions, contain many errors and mistakes. It is not hard to conclude from that his assertions that he has made mistakes in the email that he has purportedly sent out or had sent out for him.

The fact of the matter is, it is not the responsibility of Mr. Paine to deliver the documents to the Defendant, rather it is the responsibility of the Counsel and Plaintiff to deliver the documents as per the Rules and Regulations of The Hague Convention as well as the Fed R Civ Rule 4 for service on individuals abroad, attached as exhibit S.

Mr. Banerjee and his family currently live in India. Additionally, Mr. Banerjee is representing himself, by going *pro se.*  Mr. Banerjee has been receiving the documents, i.e. Motions from the Court and Court decisions via email from the docket clerk.

Regardless of the above facts, one fact that remains is that the Plaintiffs and their Counsels **did not** serve the Defendant, Banerjee, with the complaint papers as required by the Hague Convention.  Counsel for the Plaintiff mentions that he was aware that the documents are to be served under the set guidelines of the Hague Convention.  Yet, the documents were not served under those guidelines.  ***Nor has the Counsel to the Plaintiff provided any proof that the Hague Convention Rules have even been adhered to.***

Additionally, as we are proceeding with this case as *pro se*, we are requesting that the Court also allow Mr. Banerjee to be counted as attorney of record and receive documents submitted to this Court in a timely manner. The email of record should be sumanta.banerjee1@gmail.com.

## SUMMARY OF RELIEF MOTION

We respectfully ask this Court for:

1. Relief from the Motion of Default Judgment that was granted to the Plaintiff.
2. We request this relief based on Fed.R. Civ.P. 60(b), which allows for relief based on fraud and misrepresentation of the service of the complaint as well as new evidence that has come to light regarding the signing of the Settlement Agreement and its Effective Date.
3. We also request relief based on Fed.R.Civ.P. Rule 4, which states that service on individuals abroad should be in adherence to The Hague Convention.
4. We also respectfully request the Honorable Court to consider the three factors when considering a motion to set aside a default under FED. R. CIV. P. 55(c) or to reopen a default judgment under FED. R. CIV. P. 60(b): first, whether the plaintiff will be prejudiced; second, whether the defendant has a meritorious defense; and third, whether culpable conduct of the defendant led to the default.
5. We also request this relief based on the proper service required by The Hague Convention guidelines that are to be followed when serving any judicial documents to defendants residing in foreign countries. Under the Hague Convention, Article 15, and Article 16.
6. We respectfully also request the court to designate Sumanta Banerjee, as the attorney of record for the Defendant and allow for email notification and submissions of both

Orders and Motions as it relates to this case. This will allow the Defendant to represent himself in a timely and effective manner.

*I, Sumanta Banerjee, respectfully submit this motion to the Court in response to the Judgment of Default, this day of July 30, 2010.*