UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                               )
TUCKERBROOK ALTERNATIVE        )
INVESTMENTS, LP                )
                               )
              Plaintiff,       )
                               )
       v.                      )   CIVIL ACTION
                               )   NO. 09-11672-WGY
SUMANTA BANERJEE               )
                               )
              Defendant.       )
_____)
```

MEMORANDUM AND ORDER

YOUNG, D.J.                                          November 30, 2010

1.      **INTRODUCTION**

Tuckerbrook Alternative Investments ("Tuckerbrook") filed a lawsuit against Sumanta Banerjee ("Banerjee") alleging claims for breach of a settlement agreement previously entered into in a 2008 lawsuit between the two parties. The complicated and laborious procedural posture of this case, explored below, places this Court in the unique position of determining whether to vacate the second default judgment entered against Banerjee for failing to respond to the complaint.

2.      **BACKGROUND**

Tuckerbrook is a registered investment advisor regulated by

the Securities and Exchange Commission.  Compl. ¶ 6, ECF No. 1.
In May 2006, Tuckerbrook hired Banerjee to be a portfolio manager
for certain funds.  Id. ¶ 11.  Further factual background is
unnecessary, as this case hinges on issues of procedure.

Tuckerbrook filed a verified complaint on October 6, 2009,
in the United States District Court for the District of
Massachusetts, asserting claims against Banerjee for breach of a
settlement agreement reached as a resolution of a prior action in
this Court, Docket No. 08-10636-PBS ("Tuckerbrook v. Banerjee
I").  On February 23, 2010, the Court entered a default, ECF No.
8, against Banerjee for failing to respond to the complaint.  The
next day Tuckerbrook filed a motion for default judgment for sum
certain, ECF No. 10.  On March 9, 2010, this Court found moot
Tuckerbrook's motion for default judgment for sum certain, as
Banerjee had finally surfaced.  On March 5, 2010, Banerjee, by
way of an email to the Court, requested the default be set aside.
In his affidavit, Banerjee claims that he had no knowledge of the
pending suit because the complaint and summons had never been
served upon him.  Banerjee Aff. Opp. Default ¶ 3, ECF No. 12.
The Court granted the motion to set aside the default because
Tuckerbrook's affidavit of service revealed that it was
Banerjee's father, the late Mr. S.K. Banerjee, who had
inadvertently been served.  Id. at 8.  On December 1, upon
realizing the error, Banerjee's father had returned the unopened

complaint and summons to the service processor, Brutalia Associates.  Id.  Thus, service was not proper.

After Tuckerbrook's motion for default judgment for sum certain was declared moot, it filed a motion to deem service of process effectuated, ECF No. 13, based on the prior (improper) service as well as emailed copies of the summons and complaint sent to the email address Banerjee had used to communicate with the Court.  See Carnathan Aff., Ex. A, ECF No. 14-1.  Based on these representations, this Court allowed Tuckerbrook's motion and required that Banerjee reply within 45 days.  Banerjee responded by again emailing the Court to explain that he had not yet received the complaint.  See Banerjee Letter, ECF No. 15.  On April 23, 2010, an order was entered directing Tuckerbrook to mail yet another copy of the complaint either by certified mail or another equally verifiable delivery service.  This order also stated that the Court had acquired personal jurisdiction over Banerjee on account of his repeated email correspondence with the Court.

On April 30, 2010, Tuckerbrook filed an affidavit of service, ECF No. 16, which consisted of a letter from the customer service department of Mercury Business Services ("Mercury").  The letter explained that service was attempted through the company DHL, but was refused by Banerjee on April 29.  Carnathan Aff., ECF No. 16.  The letter also mentions a further

attempt to proffer service — a phone call on April 30 to Banerjee urging him to accept the shipment as it contained court-ordered documents — that was also refused. Id. Banerjee responded with another letter to the Court inquiring as to what personal jurisdiction entailed. See Banerjee Letter, ECF No. 17. This letter also explained that the attempted delivery was not refused by Banerjee himself, but rather by his illiterate house servants. Id.

On June 1, 2010, the Court made the second entry of default against Banerjee, ECF No. 20. On June 3, Tuckerbrook filed a motion for default judgment for sum certain, ECF No. 22. Another email, ECF No. 24, was received from Banerjee on June 8, which was treated as a motion in opposition to the default and a motion to extend time, both of which were promptly denied. The Court allowed Tuckerbrook's motion for default judgment for sum certain on June 30.

Over a month later, on August 12, Banerjee filed several motions including a motion to dismiss and a motion to vacate the default judgment, ECF Nos. 27 and 29, respectively. The motion to vacate asserted several grounds whereby the default judgment must be vacated under Rule 60(b) of the Federal Rules of Civil Procedure. Tuckerbrook responded with a motion in opposition six days later, ECF No. 31. At that point, Banerjee, previously representing himself pro se, obtained counsel who filed memoranda

4

in support of his motion to vacate the default judgment, ECF No. 34.  Tuckerbrook filed a reply to the supplemental memoranda on October 21.  The Court must now decide whether once again to allow Banerjee's motion to vacate the default judgment.

**III. ANALYSIS**

    A.    Legal Standard

Once a default judgment has been entered, relief must be sought under Federal Rule of Civil Procedure 60(b).  See Fed. R. Civ. P. 55(c).  The district court has sound discretion to allow or deny a motion to set aside a default judgment.  United States v. One Urban Lot, Etc., 865 F.2d 427, 429 (1st Cir. 1989).  Generally, legal policy prefers case resolution on the merits.  Am. Metals Serv. Exp. Co. v. Ahrens Aircraft, Inc., 666 F.2d 718, 720 (1st Cir. 1989); see also 11 Charles Alan Wright & Arthur Miller, Federal Practice and Procedure § 2857 (2d ed. 2010) (hereinafter "Wright & Miller").  Moreover, there is greater cause for liberality in reopening a case that has never been considered on the merits.  Id.

While a Rule 60(b) motion ultimately is at the discretion of the court, the remedial nature of the rule tends toward the exercise of such discretion.  Id.  If the movant can demonstrate that he is seeking timely relief and can assert a meritorious defense, judgment should be set aside.  Id.; see Schwab v. Bullock's, Inc., 508 F.2d 353, 355 (9th Cir. 1974) (noting that

discretion is limited by the remedial nature of the governing rule, the general disfavor of default judgments, and the preference that doubt be resolved in favor of setting aside judgment, so that cases may be resolved on the merits). Additionally, the First Circuit has identified three factors to consider in determining whether to set aside a default judgment: (1) whether the default was willful; (2) whether the defendant has a meritorious defense; and (3) whether the opposing party would be prejudiced. Coon v. Grenier, 867 F.2d 73, 76 (1st Cir. 1989). The Coon court cautioned that these need not be the only considerations, but rather that they serve as general guidelines. Id.

    B.    Setting Aside the Default Judgment

Banerjee, both in his pro se motion to vacate and his counsel's supporting memoranda, asserts a variety of legal theories as to why this default judgment must be vacated. The Court need not entertain each theory, for one alone leads to the conclusion that the judgment should be vacated. Banerjee contends the Court erred as matter of law in ruling that it had acquired personal jurisdiction over the defendant, thus rendering void the default judgment. Mem. Supp. Mot. Vacate 6-9, ECF No. 34. The lack of personal jurisdiction, according to Banerjee, arises from Tuckerbrook's failure properly to serve him under the Hague Convention on Service Abroad of Judicial and Extrajudicial

Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361 [hereinafter "Hague Service Convention"].  Because proper service is a prerequisite to the exercise of personal jurisdiction, lack thereof will render any subsequent ruling void.

Proper service under Rule 4 of the Federal Rules of Civil Procedure is required for a court to obtain personal jurisdiction over a defendant.  Echevarria-Gonzalez v. Gonzalez-Chapel, 849 F.2d 24, 28 (1st Cir. 1988).  When effectuating service on a foreign defendant, service consistent with any internationally agreed means reasonably calculated to give notice is acceptable, including service authorized by the Hague Service Convention. Fed. R. Civ. P. 4(f)(1).  When a foreign defendant resides in a signatory country, service upon that defendant must be made in accordance with the treaty.  See Tabb v. Journey Freight Internations, 584 F. Supp. 2d 334, 340 (D. Mass. 2008) (Ponsor, J.) (holding that to make effective service in a country that has joined the Hague [Service] Convention, a plaintiff must follow the provisions of the treaty) (citations omitted); see also Marcantonio v. Primorsk Shipping Corp., 206 F. Supp. 2d 54, 57 (D. Mass. 2002) (Lasker, J.) ("Rule 4(f)(1) requires the use of the provisions outlined by the Hague [Service] Convention when it is in effect.").

The defendant, Banerjee, is a resident of India.  India has

been a signatory to the Hague Service Convention since November 23, 2006.  See The World Org. for Cross-Border Co-operation in Civil and Commercial Matters, Hague Conference Status Table, http://hcch.e-vision.nl/index_en.php?act=conventions.status&cid=17 (last updated Oct. 18, 2010).  Article 10 of the Hague Service Convention provides that, notwithstanding any reservations, the Convention will not interfere with the freedom to send judicial documents directly to persons abroad through postal channels.  Hague Service Convention, art. 10.  Pursuant to Article 21 of the treaty, India maintains reservations to the Hague Service Convention, including opposition to the methods of service provided in Article 10.  Matorin Aff., Ex. A, available at http://www.hcch.net/index_en.php?act=status.comment&csid=984&disp=resdn, ECF No. 34-1.  Because India opposes the methods of service proscribed in Article 10, certified mail was not a sufficient method of service in this case.  Accordingly, to effect proper service in India consistent with the Hague Service Convention, a plaintiff must submit a copy of the complaint and summons to the Central Authority of India, which shall then serve the documents to the appropriate agency through a method proscribed by the internal law of the country.  See Hague Service Convention, arts. 3-5.

   The record shows Tuckerbrook attempted to serve Banerjee on

more than one occasion. The first attempt was by certified mail on November 30, 2009, and was incorrectly served on Banerjee's father, the late Mr. S. K. Banerjee. At this point, the first default was entered and subsequently removed when it was discovered that Banerjee had not been properly served. Tuckerbrook then made representations to the Court that service had been effectuated, and upon these representations, the Court deemed service of process effectuated. Following this ruling, the Court made an entry clarifying that it had obtained personal jurisdiction over Banerjee and further required Tuckerbrook once again to effect service of process upon the defendant.[1] See Aff. Return Service, ECF No. 5.

Tuckerbrook attempted to serve Banerjee again, by order of the Court, on April 30, 2010, through a courier service, Mercury. The affidavit of service supplied by Tuckerbrook in this instance was a letter from Mercury explaining that Banerjee had refused service shipped by DHL. The letter, signed by customer service, is not a proper return of service affidavit because it is not the correct form and it is not signed by the actual service provider.

---

[1] The Court's ruling that it had acquired personal jurisdiction based on this and other representations of service was incorrect. Because service of process had not been effectuated, the Court did not properly exercise personal jurisdiction over Banerjee at that time. As explained below, this erroneous decision is of no consequence at this stage of the proceedings, but it having come to the Court's attention now, the Court wishes to correct it.

Thus, this evidence amounts only to hearsay; it did not provide the proper basis for the Court to acquire personal jurisdiction. Accordingly, because Tuckerbrook did not properly serve Banerjee under the Hague Service Convention in its second attempt,[2] service was again improper, and like the first time, it appears that for this reason the second judgment of default should also be void.[3]

---

[2] Tuckerbrook claims to have initiated service properly through the Hague Service Convention. See Mem. Supp. Mot. Deem Service Effectuated 2, ECF No. 14. This bare assertion of compliance is unaccompanied by any evidentiary support to show that Tuckerbrook has even attempted to proffer service through the proper channels under the Hague Service Convention. Without evidentiary support, this Court has no choice but to conclude that Banerjee was not properly served.

[3] A void judgment is a legal nullity. See Black's Law Dictionary 1822 (3d ed. 1933); see also id. at 1709 (9th ed. 2009). While difficulties may arise in determining whether a judgment is void, once that is resolved, a court must act accordingly, and void judgments must be vacated. Wright & Miller § 2862. Lack of personal jurisdiction is a principal basis for attacking a default judgment under Rule 60(b)(4); if a judgment is found to be void under that attack, the court has no discretion but to vacate the default judgment. Echevarria-Gonzalez, 849 F.2d at 28 (citing Wright & Miller § 2697).

    While case law indicates that a void judgment must be vacated, Tuckerbrook astutely notes that improper service does not necessarily render a judgment void. Tuckerbrook argues that in order for a judgment to be void, it must be lacking even an arguable basis for jurisdiction. United Student Aid Funds, Inc. v. Espinosa, 130 S. Ct. 1367, 1377 (2010) ("Federal courts considering Rule 60(b)(4) motions that assert a judgment is void because of a jurisdictional defect generally have reserved relief only for the exceptional case in which the court that rendered judgment lacked even an 'arguable basis' for jurisdiction.").

    Here, the Court mistakenly declared its jurisdiction over Banerjee in its April 23, 2010, ruling. But this was an error in the exercise of jurisdiction to be distinguished from a total

While the Court may have erred in its first ruling declaring it had acquired personal jurisdiction, the second default was not void because the Court in fact had acquired personal jurisdiction through Banerjee's own procedural maneuver.  Although unclear in the prior proceedings, there is no doubt going forward that the Court had, and continues to have, personal jurisdiction, for Banerjee has been too clever by half.  After the Court had removed the first default ruling and in lieu of answering the complaint, but before the second default was entered, Banerjee brought his own lawsuit against Tuckerbrook in this district on May 24, 2010.  See Banerjee v. Tuckerbrook Alternative Assets, LP

---

want of jurisdiction.  See United States v. Boch Oldsmobile, Inc., 909 F.2d 657, 661-62 (1st Cir. 1990) ("[T]otal want of jurisdiction must be distinguished from an error in the exercise of jurisdiction, and . . . only rare instances of a clear usurpation of power will render a judgment void." (brackets and internal quotation marks omitted)).  At the time of the Court's error, Banerjee had communicated on several occasions with the Court through email, to a great extent indicating his awareness of the suit pending against him.  Furthermore, in filing a motion to dismiss, Banerjee demonstrated that he not only had notice, but that he had actual possession of the complaint by the time the second default entered.  Additionally, the Court relied on several representations by Tuckerbrook that showed that service had been attempted.  In short, the Court's exercise of jurisdiction hardly offended due process, as Banerjee had adequate notice that a suit was pending against him.  Thus, while the Court's initial ruling was erroneous because Banerjee was not in fact properly served, this was but a mere error and does not necessarily void the second default judgment.  The Court need not reach this issue, however, because for other reasons, as explained in the text, the Court concludes that it properly had jurisdiction over Banerjee at the time of the second default judgment but that it is nonetheless still appropriate now to vacate that judgment.

& John J. Hasset, Docket No. 10-10894-WGY. By filing this separate lawsuit in this district court arising out of the same nucleus of operative fact, Banerjee has submitted himself to the jurisdiction of the United States District Court, District of Massachusetts, thus waiving any objection to personal jurisdiction. See General Contracting & Trading Co., LLC v. Interpole, Inc., 940 F.2d 20, 23-24 (1st Cir. 1991); see also Lyman Steel Corp. v. Ferrostaal Metals Corp., 747 F. Supp. 389, 396-97 (N.D. Ohio 1990) (holding that a defendant's subsequent filing of an independent suit in the same forum predicated on the same nucleus of operative fact is sufficient for the court's exercise of personal jurisdiction in the original action).

Unlike subject matter jurisdiction, lack of personal jurisdiction is a defense of privilege. It "can be waived 'by failure [to] assert [it] seasonably, by formal submission in a cause, or by submission through conduct.'" Marcial Ucin, S.A. v. SS Galicia, 723 F. 2d 994, 996 (1st Cir. 1983). Specifically, a defendant impliedly may manifest consent to a court's personal jurisdiction through conduct. Interpole, 940 F.2d at 22. The Interpole court provides a detailed analysis of the possible distinctions between "consent" and "waiver" in terms of submission to a court's jurisdiction, but ultimately holds that such distinctions are "artificial and unnecessary". Id. at 23.

In Interpole, a defendant, Trastco, initiated an independent suit against the plaintiff in the original suit in the same federal district court in connection with the same overall transaction. Id. at 21. In light of the second suit between the two parties, the court in Interpole held that Trastco had submitted itself to the court's personal jurisdiction by availing itself of the forum, thereby obviating the need for a conventional long arm analysis. Id. at 22.

In the present case, Banerjee similarly has indicated purposeful availment of the forum by initiating an independent lawsuit against Tuckerbrook in this district court. After the initial default judgment against Banerjee was vacated on March 9, 2010, he still did not respond to the complaint. Tuckerbrook filed a second motion for entry of default against Banerjee on May 27, 2010. In the meantime, on May 24, 2010, Banerjee filed a separate lawsuit against Tuckerbrook styled Banerjee v. Tuckerbrook Alternative Assets, LP & John J. Hassett. In this lawsuit, for breach of contract, Banerjee alleges that Tuckerbrook breached the settlement agreement by violating the confidentiality and non-disparagement clauses. The claims rest on the same nucleus of operative fact as the present suit, including prior business dealings between the two parties, the settlement agreement (resulting from Tuckerbrook v. Banerjee I),

and another lawsuit, <u>Alkek & Williams Ltd.</u> v. <u>Tuckerbrook Altnernative Investments, LP</u>, Case No. 08-CV-3501 (pending in the United States District Court for the Southern District of Texas) ("Alkek Lawsuit").  Although Banerjee voluntarily dismissed his lawsuit on September 20, the Court observes that simply by initiating the independent lawsuit, Banerjee availed himself of the benefits of this district court and therefore surrendered any jurisdictional objections.  <u>See</u> <u>Marron</u> v. <u>Whitney Group</u>, 662 F. Supp. 2d 198, 200 (D. Mass. 2009) (Tauro, J.) ("A defendant who purposely avails himself of a particular forum . . . by initiating a lawsuit there impliedly submits to that forum's jurisdiction with regard to all actions arising from the same nucleus of operative facts, or sharing the same transactional core.").  As the <u>Interpole</u> court noted, it would create an "unjust asymmetry" to allow Banerjee to enjoy the full benefits of the court qua plaintiff, while retaining immunity from the court's authority qua defendant regarding claims asserted by the very party he is suing.  <u>Interpole</u>, 940 F.2d at 23.  Thus, the Court had acquired personal jurisdiction before the second entry of default.  Accordingly, the second entry of default against Banerjee is not void, despite Tuckerbrook's improper service.

It is, therefore, left to the Court's discretion whether to vacate the default judgment a second time.  Tuckerbrook argues

that a Rule 60(b) motion must be granted sparingly and only under extraordinary circumstances. Tuckerbrook's Opp. Mot. Vacate Default J. 6, ECF No. 31. Furthermore, Tuckerbrook alleges Banerjee does not meet the stringent elements outlined in Karak v. Bursaw Oil Corp., 288 F.3d 15, 19 (1st Cir. 2002). The court in Karak, however, was reviewing a district court's decision to deny a Rule 60(b)(2) motion; the final judgment in that instance was a dismissal following the initial pleading stage. While the district court in Karak had not reached the merits, it had at least grappled with the pleadings and ultimately dismissed the case for lack of subject matter jurisdiction. Here, the Court has not yet reached the merits; indeed, it has not even considered the pleadings.

This Court will refer to the guidelines established by the Coon court, outlined above, to determine whether relief under Rule 60(b) is proper. First, Tuckerbrook provides no evidence in its opposition or its reply indicating it would be prejudiced by proceeding to the merits. Second, Banerjee, in both his motion to dismiss and his counsel's supporting memoranda, has outlined what may suffice for a meritorious defense. Finally, as discussed above, while it appears that Banerjee has conveniently avoided service, there is no evidence that he has done so willfully; because Banerjee was never properly served under the

Hague Service Convention, this Court does not hold that he willfully defaulted.

Federal Rule of Civil Procedure 60(b)(6) gives the Court discretion to relieve a party from a final judgment for "any other reason that justifies relief."[4]  Fed. R. Civ. P. 60(b)(6). In this case, the Court concludes that the principles of equity and justice require the removal of default.  See Ungar v. Palestine Liberation Org., 599 F.3d 79, 83 (1st Cir. 2010) ("The decision to grant or deny [Rule 60(b)(6)] relief is inherently equitable in nature.").  Although there is no time limit for relief under Rule 60(b)(6), Banerjee has filed his motion well within one year of the entry of judgment.  And while the Court surmises that Tuckerbrook would object to relief under this subsection of the Rule, based on its allegations that Banerjee willfully defaulted, relief is nonetheless proper.  The Court has already reasoned that Banerjee did not willfully default; notwithstanding that ruling, a willful default is not a categorical bar to relief under Rule 60(b)(6).  See Ungar, 599 F.3d at 84.

Unlike any other subsection of Rule 60, subsection (b)(6) is a catch-all provision, which broadens the grounds for relief from

---

[4] Banerjee does not specifically rely on subsection (b)(6) of Rule 60 in asking this Court to grant him relief from the default judgment.

judgment.  See Wright & Miller § 2864.  Rule 60(b)(6) gives the Court the power to provide relief wherever such action is necessary to the delivery of justice.  Id.; see also Klapprott v. United States, 335 U.S. 601, 614-15 (1949).  The unique circumstances of this case warrant relief under Rule 60(b)(6).  Prior to the second entry of default, Banerjee was acting pro se.  When he initiated a separate lawsuit in this district, it was not likely that Banerjee could foresee the consequences of his action.  It would be unfair to reign in Banerjee and acquire personal jurisdiction over him through a procedural glitch, only to confirm a default judgment forcing him to pay significant damages.  Furthermore, Banerjee was never properly served under the Hague Service Convention, which would render the judgment void on the basis of lack of personal jurisdiction, if the Court did not otherwise have jurisdiction over him.  Therefore, this Court holds that it may properly grant relief under Rule 60(b)(6), and further holds that, considering the remedial nature of the motion, the default judgment will be vacated in the interests of justice.[5]

---

[5] This Court notes that Federal Rule of Civil Procedure 55(c) also "allows a district court, in its discretion, to vacate entry of default 'for good cause shown.'"  Marcantonio, 206 F. Supp. 2d at 60 (citing Fed. R. Civ. P. 55(c)).  "It is plain that improper service constitutes 'good cause.'"  Id.  Accordingly, as alternate grounds for relief, it would be appropriate to set aside the default judgment under Rule 55(c).

C.  Waiver of Objection to Insufficient Service

While this Court has acquired personal jurisdiction over Banerjee, the issue of proper service still lingers.

On August 12, 2010, Banerjee filed a motion to dismiss Tuckerbrook's verified complaint.  Included in his motion to dismiss was an answer to the complaint, generally denying all allegations in response to all counts.  See Def. Mot. Dismiss 21-25 ¶¶ 21-39, ECF No. 28.  Subsequently, Banerjee raised a slew of affirmative defenses including failure to state a claim upon which relief may be granted, Fed. R. Civ. P. 12(b)(6), and failure to join necessary parties, Fed. R. Civ. P. 12(b)(7).  Id. 26.  Banerjee failed, however, to raise the defense of insufficient service of process.  See Fed. R. Civ. P. 12(b)(5).  In light of his responsive pleading, including an answer — albeit unconventionally addressed — to the complaint, going forward Banerjee effectively waives his right to raise the defense of insufficient service of process.  A party waives a defense listed in Rule 12(b)(2)-(5) when he fails to raise it in a responsive pleading that brings forth other defenses or objections.  See Fed. R. Civ. P. Rule 12(h)(1)(B)(ii).  Ergo, Banerjee may no longer hide behind the shield of proper service of process effectuated through the Hague Service Convention.

This Court proceeds with great caution in denying Banerjee

the ability to raise any future objections regarding service of process.  Protecting the rights of foreign residents under international treaties is an important aspect of our judicial system.  The Supreme Court recognized that the intended purpose of the Hague Service Convention is to provide a "simpler way to serve process abroad, to assure that defendants sued in foreign jurisdictions would receive actual and timely notice of suit, and to facilitate proof of service abroad."  <u>Volkswagenwerk Aktiengesellschaft</u> v. <u>Schlunk</u>, 486 U.S. 694, 698 (1988).  It would undermine this purpose to allow judges to determine the proper method of service of process on a case by case basis, rather than according to clearly enacted rules.  <u>See</u> <u>Lyman Steel Corp.</u>, 747 F. Supp. at 400.  In this case, however, because Banerjee sought procedural benefits according to the Federal Rules of Civil Procedure, he must endure the consequences of those Rules.

Although Banerjee has not been served through the Central Authority in India consistent with the Hague Service Convention, he has nonetheless put forth a responsive pleading to the complaint according to the Federal Rules of Civil Procedure. While this Court is sensitive that the Federal Rules should not abrogate Banerjee's rights under the Hague Service Convention, Banerjee has acted in a manner consistent with the Rules so as to

19

warrant this holding. The intent of this Court is not to undermine Banerjee's rights, but rather to uphold the principles of comity and justice. It is the belief of this Court that the purposes of the convention have been served and thus Banerjee's rights have been properly afforded.

This Court further requires Banerjee, now having sought counsel, to submit a formal answer or otherwise responsive pleading to the complaint within ninety days of this memorandum and order.

## IV. CONCLUSION

Accordingly, ECF No. 29 is ALLOWED and the default judgment entered against Banerjee is VACATED.

SO ORDERED.

/s/ William G. Young

WILLIAM G. YOUNG
DISTRICT JUDGE